Ray **LEWIS,** Plaintiff-Appellant,

v.

**LOCAL UNION NO. 100 OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO,** Defendant-Appellee.

No. 83–3095.

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1984.

Decided Dec. 18, 1984.

Paul E. Ground, Quinn, Ground & Banton, Ellisville, Mo., for plaintiff-appellant.

Barry J. Levine, Gruenberg, Souders & Levine, St. Louis, Mo., for defendant-appellee.

Before BAUER and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

Plaintiff-appellant Ray Lewis appeals from the district court's order granting defendant-appellee's, Local Union No. 100 of the Laborers' International Union of North America, AFL-CIO ("the Union"), motion to dismiss with prejudice his five-count amended complaint. The district court dismissed the complaint on the grounds that (1) Lewis' claims were subject to the exclusive jurisdiction of the National Labor Relations Board ("NLRB"); (2) Lewis' claims were time-barred; (3) Lewis failed to exhaust intra-union remedies; or (4) punitive damages are not recoverable in fair representation lawsuits. We affirm in part, reverse in part, and remand for further proceedings.

## I

The allegations in this case, which we take as true for the purposes of determining the propriety of the dismissal of this action, are as follows. Lewis is a member of the Union. Pursuant to a collective bargaining agreement between the Union and the Southern Illinois Builders' Association, the Union operates an exclusive hiring hall that refers its members out for employment.[1] Between February 1980 and June 1982 the Union refused to refer Lewis out of the hiring hall or referred him to employments of shorter duration than other Union members. When the Union did refer him to employments of longer duration, it pressured employers to terminate him. Lewis' attempts to pursue his grievances against the Union were frustrated by the Union's refusal to furnish him with copies of the Union's constitution, bylaws, and collective bargaining agreement. The Union's conduct was wilful, wanton and malicious, without justification or excuse, and the product of a personal dispute between himself and Union officials that had no bearing on Lewis' standing in the Union.

■ The Union moved to dismiss Lewis' amended complaint on the grounds set forth, *ante* at 1371. Without giving reasons, the district judge granted the motion to dismiss the complaint in its entirety. On

---

**1.** Article 3, Section 3 of one agreement in effect at the time this lawsuit was filed provides in pertinent part:

(d) The Union shall refer to the Employer such applicants as are competent to fulfill the requirements of the position sought to be filled commensurate with the rotation of registrants and who have acquired experience and possess the requisite skills for fulfillment of the vacant positions as specified by the Employer ...

\* \* \* \* \* \*

(f) The Employer reserves and shall have the right to accept or reject, to employ or not to employ, any person furnished by the Union, or to discharge for just cause an employee who has been accepted but who subsequently proves unsatisfactory to the Employer.

Section 3 of another agreement contains these same paragraphs and another paragraph providing:

The Union will not discriminate either in the maintenance of its list or its referrals for employment against any person because of his membership or non-membership in the Union. Selection of applicants for referral shall not be based on, or in any way affected by union membership, by-laws, rules, regulations, constitutional provisions, or any other aspect or obligations of union membership policies or requirements.

appeal the Union asserts that any one ground would be an adequate basis on which this court could affirm the district court's dismissal of this action. We discuss each of them separately below.[2]

## II

The Union first argues that the facts as alleged by Lewis which form the foundation for all five counts of the complaint constitute "activity [that] is arguably subject to § 7 or 8 of the [National Labor Relations] Act ("the NLRA" or "the Act")," *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), and hence the courts are preempted from hearing any of Lewis' claims. *See id.* The Union apparently acknowledges that claims under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"),[3]

for breach of the labor contract are not preempted even though the conduct giving rise to the claim is concededly an unfair labor practice.[4] *See* Appellee's Brief at 5. The Union maintains, however, that Lewis has failed to allege such a breach. Appellee's Brief at 7.

■ Lewis seems to concede that his claims are based on conduct arguably subject to section 7 or section 8 of the NLRA. Counts II and III expressly allege an unfair labor practice based upon the discriminatory job referrals. And Lewis does not appear to, nor in our view could he, seriously contest the fact that the district court properly dismissed these two counts of the complaint on preemption grounds.[5] Nonetheless, he disputes the Union's contention that count I is not a contract claim under section 301(a) of the LRMA.[6]

**2.** We note that our review would have been significantly aided if the district judge had made specific findings of fact and conclusions of law. Indeed, we have trouble understanding the district judge's failure to explain which, if any, of the alternative grounds for relief asserted below formed the basis for his decision. It is true that Fed.R.Civ.P. 52(a) does not require a district judge to make factual findings and conclusions of law when the court dismisses an action pursuant to Fed.R.Civ.P. 12 or 56. Part of the reasoning behind the rule is that the context of a case will often render obvious the grounds of the decision. That reasoning does not apply here, however, because the dismissal could have been predicated on any one of several grounds. To obviate any possibility of misunderstanding, unnecessary reversal or delay, the judge, while not required to do so, should have indicated the reasons for his decision. *See Bradley v. Weinburger*, 483 F.2d 410, 417 n. 6 (1st Cir.1973).

**3.** Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

**4.** This issue was decided by the Supreme Court in *Smith v. Evening News Ass'n*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962).

**5.** The alleged illegal conduct giving rise to Lewis' claims is without doubt subject to the prohibitions of sections 8(b)(1) and (2) of the NLRA, 29 U.S.C. § 158(b). Lewis primarily complains about two Union practices. First, he asserts that the Union failed to refer him to prospective employers in accordance with the collective bargaining agreement. This claim falls squarely within section 8(b)(1)(A) of the Act which makes it an unfair labor practice for a labor organization to restrain or coerce employees in the exercise of the rights guaranteed in section 7 of the NLRA, 29 U.S.C. § 157. *See Plumbers' Union v. Borden*, 373 U.S. 690, 694, 83 S.Ct. 1423, 1425, 10 L.Ed.2d 638 (1963); *NLRB v. Miranda Fuel Co., Inc.*, 140 N.L.R.B. 181 (1962), *enforcement denied*, 326 F.2d 172 (2d Cir.1963). Second, Lewis asserts that the Union "caused and coerced various employers to discharge him." This claim is covered by section 8(b)(2). Section 8(b)(2) makes it an unfair labor practice for a labor organization "to cause an employer to discriminate against an employee" to encourage or discourage membership in the union. 29 U.S.C. § 158(b)(2). The Supreme Court has held that "encouragement of union membership is obviously a natural and foreseeable consequence of any employer discrimination at the request of a union." *Radio Union Officers v. NLRB*, 347 U.S. 17, 52, 74 S.Ct. 323, 342, 98 L.Ed. 455 (1954).

**6.** Lewis' appellate brief is devoid of any explicit argument on the contract claim. At the oral argument of this appeal, however, Lewis informed this court that he had indeed intended to allege a breach of the labor contract.

■ We agree with Lewis. The contract claim is not a model of artful pleading. The allegations of count I are somewhat vague, and count I does not even explicitly claim a breach of contract. Indeed, it is the only count of the complaint that does not state a particular legal theory for relief. Nonetheless, it is clear that under "simplified 'notice pleading,'" *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), the allegations of the complaint should be liberally construed, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 46, 78 S.Ct. at 102 (footnote omitted). Here, Lewis alleges that a labor contract exists between the Union and a builders' association, and that the labor contract contained a provision authorizing the Union to operate a hiring hall and to "refer to the ... [builders' association] such applicants as are competent to fulfill the requirements of the position sought to be filled." *See supra* note 1. He further alleges that the Union "violat[ed] [its] ... duties ... pursuant to its contracts," (complaint, ¶ 7), by failing to refer Lewis for employment in the same manner that it referred other Union members. We think that these allegations may be fairly construed to allege a breach of contract. *See Conley*, 355 U.S. at 48, 78 S.Ct. at 103.

■ Although we have decided that Lewis has alleged a breach of contract, our analysis does not end here for it has not been resolved, at least by this circuit, whether a union member can sue his union under section 301(a) for breach of contract. Moreover, even if we decide this issue in favor of Lewis, it does not necessarily follow that Lewis' contract claim is cognizable under section 301(a). Individual employees may only sue under section 301(a) "for breach of a promise embedded in the collective bargaining agreement that was intended to confer a benefit upon the individual [employee]." *Amalgamated Assoc. of Street, Electric Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 298–99, 91 S.Ct. 1909, 1923–24, 29 L.Ed.2d 473 (1971). We now turn to the resolution of these two issues.

■ In our view, the threshold question of whether a union member can sue his union under section 301(a) for a union's breach of the collective bargaining agreement has already been decided in the affirmative by the Supreme Court. *See Lockridge*, 403 U.S. at 274, 91 S.Ct. at 1909; *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Smith v. Evening News*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). In *Evening News* the Court held that notwithstanding the fact that an employee was not a signatory to the collective bargaining agreement, he could sue his employer under section 301 for breach of that agreement. The Court specifically rejected the argument that "... § 301 ... exclude[s] all suits brought by employees ... and ... only suits between unions and employers are within the purview of § 301." *Id.* at 200, 83 S.Ct. at 270. Relying on *Evening News* the Court in *Humphrey* held that section 301(a) supports a claim by a union member against the union and the employer for certain conduct that is alleged to violate a provision of the collective bargaining agreement and also to breach the union's duty of fair representation.

That is precisely the situation presented in the instant case, except for the fact that Lewis makes no claim against the employer. And we think that Lewis' failure to make such a claim is immaterial. First, the Court in *Humphrey* gave little attention to the presence of the employer as defendant in its analysis of the propriety of maintaining the section 301(a) claim against the union. The Court was satisfied that the suit was one to enforce the collective bargaining agreement. Second, we would be creating an artificial and irrational distinction by holding that section 301(a) permits suits by employees against employers, but not against unions. Moreover, such an irrational distinction would clearly undercut the broad rationale of *Evening News*, and

the clear congressional policy choices behind section 301(a) which were identified by the Court in that case. *See id.* at 199–200, 83 S.Ct. at 269–70. Finally, although *Lockridge* might at first glance suggest that the presence of the employer as a defendant is critical to section 301(a) jurisdiction, *see id.* at 298–99, 91 S.Ct. at 1923–24, a closer look reveals that in that case the employee sued his union for breach of an implied agreement between the union and the employee, not for the union's breach of the collective bargaining agreement. Indeed, in *Lockridge,* the Court explicitly noted without qualification that "... individual employees have standing to protect rights conferred upon them by such agreements." *Id.* at 298, 91 S.Ct. at 1924 (citations omitted). *See also United Association of Journeymen & Apprentices of the Plumbing & Pipefitters, Industry v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981) (permitting suit by one union against another for alleged violations of a union constitution to be maintained under section 301); *Rutledge v. Aluminum Brick & Clay Workers Int'l Union,* 737 F.2d 965 (11th Cir.1984); *International Union, Allied Industrial Workers v. Local Union No. 589,* 693 F.2d 666, 671 (7th Cir.1982); *Hill v. Iron Workers Local Union, No. 25,* 520 F.2d 40 (6th Cir.1975); *Dente v. Masters, Mates & Pilots Local 90,* 492 F.2d 10 (9th Cir.1973), *cert. denied,* 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974). Thus, there can be little doubt that an employee can maintain an action under section 301(a) against the union for breach of the labor contract, at least, where, as here, the employee has also alleged a breach of the duty of fair representation.

The second issue—whether the contract provisions on which Lewis relies were "intended to confer a benefit upon ... [Lewis]," *Lockridge,* 403 U.S. at 298–99, 91 S.Ct. at 1924,—is less clear. Those provisions may have been negotiated solely for the benefit of the employer as a protection against a union's abusing its exclusive power to refer employees. For example, in this case, the employers demand to be allowed to veto the Union's referrals, and they in-

sist that the Union promise to refer competent applicants to them and also not to discriminate against nonunion workers. If the Union breaks this promise the employers can sue the Union under section 301(a), but the employee cannot because the promises do not run to him. And there is no allegation that any employer covered by the agreement in this case is dissatisfied because the Union has not referred Lewis to him. It may be doubtful therefore whether this is a suit "by a union member against his union that seeks to redress union interference with rights *conferred on individual employees* by the employer's [or the union's] promises in the collective-bargaining agreement," *Lockridge,* 403 U.S. at 299, 91 S.Ct. at 1924 (emphasis added).

Nonetheless, we cannot be so certain as to be justified in affirming the dismissal of Lewis' complaint on the pleadings. There can be no question that hiring halls confer a benefit on employees, which may be why employees often pay a fee to be able to participate in the hiring hall. *See Local 357, International Brotherhood of Teamsters v. NLRB,* 365 U.S. 667, 672, 81 S.Ct. 835, 837, 6 L.Ed.2d 11 (1961); Gorman, *Basic Text on Labor Law* 668–69; Meltzer, *Labor Law: Cases, Materials, and Problems* 1066 (2d ed. 1977). Indeed, additional facts not before this court may show that the referral provisions were negotiated with the added objective of assuring "competent" employees who used the hiring hall that they would be referred in the same manner as all other "competent" employees, or that the nondiscrimination provision in the collective bargaining agreement may have been intended to protect all employees in the collective bargaining unit from any discriminatory referrals. If these or other similar facts are shown on remand to exist then Lewis would probably have a good cause of action.

 Thus, based on the limited record before us, we find that Lewis has alleged a breach of contract claim against the Union

that is cognizable under section 301(a).[7] Ordinarily, that would end our discussion of the preemption issue,[8] because under *Humphrey* the fair representation claims in counts IV and V could be maintained in the same section 301(a) action. But the Union here *also* asserts that the district court properly dismissed the fair representation claims. It argues that allegations of discriminatory job referrals do not constitute a claim for breach of the duty of fair representation;[9] and that even if they do, *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) exempts from preemption only those fair representation claims that are brought in conjunction with a section 301(a) claim against the employer. Lewis disagrees.

 Our research and review of the cases cited by both parties again compel us to adopt the position proffered by Lewis. The duty of fair representation was judicially created as a correlative to the union's statutory right under section 9(a) of the Act[10] to serve as the exclusive representa-

---

7. In arguing that section 301(a) is a proper jurisdictional basis for his complaint, Lewis erroneously focuses exclusively on his fair representation allegations and argues that *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) held that section 301(a) provides subject matter jurisdiction over "bare" duty of fair representation claims. We do not agree. In *Vaca*, in addition to alleging that his union breached its duty of fair representation, the employee also alleged under section 301(a) that his employer breached the collective bargaining agreement. The Court held that jurisdiction under section 301(a) was not defeated merely because an employee chose to join a related claim against the union for breach of the duty of fair representation. Nowhere in *Vaca*, however, did the Court even come close to suggesting the position Lewis is urging upon us today. Indeed, we are convinced that Lewis' interpretation of *Vaca* is incorrect. *See Waters v. Wisconsin Steel Works of International Harvester*, 427 F.2d 476, 490 (7th Cir.), *cert. denied*, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 911 (1970). *See also Schultz v. Owens-Illinois, Inc.*, 560 F.2d 849, 855 (7th Cir. 1977) *cert. denied*, 434 U.S. 1011, 98 S.Ct. 723, 54 L.Ed.2d 754 (1978) (*Vaca* holds that in a section 301(a) claim against an employer, the "union is a proper additional defendant if, as here, plaintiffs allege that their union breached the duty of fair representation.").

Indeed, it is well-settled that the proper jurisdictional basis for "bare" fair representation claims is 28 U.S.C. § 1337. *See Beriault v. Local 40, Super Cargoes & Check. of I.L. & W.U.*, 501 F.2d 258, 264 (9th Cir.1974); *Smith v. Local No. 25, Sheet Metal Worker's Int. Ass'n*, 500 F.2d 741, 746–48 (5th Cir.1974); Gorman, *Basic Text on Labor Law* 702. Thus, on remand, even if the district court were to find based on facts not presented to this court, that the labor contract provisions at issue here were not "intended to confer a benefit" on individual union members, it would still have jurisdiction over the fair representation claim under 28 U.S.C. § 1337 even though Lewis has failed to plead or rely on that statute. *See Humphrey*, 373 U.S. at 352, 84 S.Ct. at 373 (Goldberg, J., concurring); *Associa-*

*tion of American Medical Colleges v. Califano*, 569 F.2d 101 (D.C.Cir.1977).

8. As a general rule, employees must attempt to exhaust the grievance and arbitration procedures established by the collective bargaining agreement before seeking judicial enforcement of their rights under the contract. *Vaca*, 386 U.S. at 184–85, 87 S.Ct. at 913–14. Because Lewis' claim is based upon a breach of the collective bargaining agreement, he is bound by the terms of that agreement which govern the manner in which contractual rights may be enforced. *Id.* However, the issue of whether Lewis has even attempted to exhaust any grievance or arbitration procedures that may be in the labor contract has not been raised before this court. In addition, no facts have been presented to this court that would permit us to resolve this issue. Thus, we leave it to the district court to determine if Lewis has fulfilled this exhaustion requirement or if Lewis is exempt from exhaustion under either of the two limited exceptions outlined in *Vaca*, 386 U.S. at 185, 87 S.Ct. at 914.

9. The Union has not explicitly argued that discriminatory job referrals are not a breach of the duty of fair representation. In fact, in several parts of its brief, it apparently concedes this issue. Nonetheless, in arguing that Lewis' claims are preempted, the Union cites *Kupec v. Plumbers, Local 75*, 101 L.R.R.M. 3052 (E.D.Wis. 1979), in which the court held that hiring hall practices could not constitute a breach of the duty of fair representation and they were therefore within the exclusive jurisdiction of the NLRB. We therefore infer that the Union is claiming that Lewis has not stated a fair representation claim.

10. Section 9(a), 29 U.S.C. § 159(a) provides:

Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to

tive for the members of the collective, bargaining unit. *Schneider Moving & Storage Co. v. Robbins*, —— U.S. ——, 104 S.Ct. 1844, 1851 n. 22, 80 L.Ed.2d 366 (1984); *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 46 n. 8, 99 S.Ct. 2121, 2125 n. 8, 60 L.Ed.2d 698 (1979); *Freeman v. Local Union No. 135*, 746 F.2d 1316 at 1320 (7th Cir.1984); *Ranieri v. United Transportation Co.*, 743 F.2d 598 at 600 (7th Cir.1984). It was created as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca*, 386 U.S. at 182, 87 S.Ct. at 912. *See also DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 at 165 n. 14, 103 S.Ct. 2281 at 2290 n. 14, 76 L.Ed.2d 476. The Supreme Court has held that under the fair representation doctrine "a union must fairly … represent … [its] members during the negotiations, administration, and enforcement of collective-bargaining agreements." *Foust*, 442 U.S. at 47, 99 S.Ct. at 2125. In our view, this means that the union has a duty to represent fairly the interests of all of its members in any dealings with the employer resulting from its exclusive right to represent all bargaining-unit members. *See also Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1102–03 (6th Cir.1981); *In re Carter*, 618 F.2d 1093, 1104 (5th Cir. 1980). In fact, this circuit has already found that a plaintiff states a claim for breach of the duty of fair representation when he alleges any "arbitrary, discriminatory or bad faith [conduct]" by the union in the pursuance of its exclusive bargaining-agent authority. *Superczynski v. P.T.O. Services, Inc.*, 706 F.2d 200, 202–03 (7th Cir.1983). *See also Farmer*, 660 F.2d at 1102–03.

■ Lewis' complaint clearly meets these criteria. He alleges that the Union has arbitrarily and in bad faith discriminat-ed against him in failing to refer him to employers in the same manner that it referred other employees. The Union's right to refer employees derives from section 3 of the collective bargaining agreements. In making referrals under those agreements the Union is administering and enforcing the agreement and dealing with the employers pursuant to its exclusive bargaining-agent status. Thus, under the precedents discussed above, Lewis has stated a claim for fair representation breach. *See Smith v. Local Union No. 25*, 500 F.2d 741 (5th Cir.1974). *Cf. Vandeventer v. Local Union No. 513*, 579 F.2d 1373, 1377–79 (8th Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978) (district court has concurrent jurisdiction over discriminatory job referral claim brought under section 101(a)(5) of the Labor Management Relations and Disclosure Act, 29 U.S.C. § 411(a)(5) (1982)).

It is also clear that this duty of fair representation claim has been exempted from the preemption doctrine by *Vaca*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842. In *Vaca* an employee sued his employer under section 301(a) for discharging him in violation of the collective bargaining agreement and the union for breach of the duty of fair representation. The Supreme Court rejected the union's preemption defense on the ground that the courts retain jurisdiction over duty of fair representation claims even if the underlying conduct assailed is an unfair labor practice. The Court reached this result because "it could not fairly be inferred that Congress intended exclusive jurisdiction to be with the NLRB" in duty of fair representation cases. *Vaca*, 386 U.S. at 179, 87 S.Ct. at 911.

In our judgment, *Vaca* establishes a broad immunity from preemption for all fair representation suits not just those that arise in conjunction with a section 301(a) claim against an employer. It is true that

rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given the opportunity to be present at such adjustment.

in *Vaca* the Court emphasized that the particular duty of fair representation claim was inextricably intertwined with the section 301(a) claim against the employer. The Court, however, gave other strong reasons militating against preemption of these types of claims. It noted that fair-representation lawsuits would not undermine a primary justification for the preemption doctrine: "the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administration agency created by Congress for that purpose." *Id.* at 180–81, 87 S.Ct. at 911–12. It also stated that the duty of fair representation was a judicially created doctrine that the NLRB had merely adopted and over which the NLRB exercised no particular degree of competence not possessed by the courts. It noted that relegating all fair representation claims to the NLRB might deprive aggrieved individuals of a forum should the NLRB be unwilling or unable to provide a remedy.

Our view that *Vaca* means that duty of fair representation claims are not preempted only when presented to the courts in a section 301(a) lawsuit against the employer is further supported by *Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473, in which the Court clearly stated that *Vaca* was to be interpreted broadly:

> ... Indeed, in *Vaca v. Sipes,* ... we held that an action seeking damages for injury inflicted by breach of a union's duty of fair representation was judicially cognizable *in any event,* that is, even if the conduct complained of was arguably protected or prohibited by the National Labor Relations Act and *whether or not the lawsuit was bottomed on a collective agreement....*

*Id.* at 299, 91 S.Ct. at 1924 (emphasis added).

▆▆ Were we to adopt the position that jurisdiction would be preempted in all fair

representation claims except those in which the individual employee also alleged breach of contract against the employer, we would be ignoring *Lockridge* and the other equally compelling reasons given by the Court in *Vaca* for finding the preemption doctrine inapplicable. Furthermore, as one commentator has suggested, adopting the more restrictive interpretation of *Vaca* would lead to an "anomalous division of responsibility between the ... [NLRB] and the courts, ...." Gorman, *Labor Law—Basic Text* 704. Finally, the interpretation of *Vaca* which the Union advances directly conflicts with our previously expressed view that *Humphrey* permits a dual contract/fair representation claim against a union regardless of whether the employer is also included as a defendant. We are thus persuaded that under *Vaca* the federal courts retain concurrent jurisdiction with the NLRB over all fair representation claims—regardless of the presence of the employer as a defendant in the lawsuit. *See also Edwards v. Sealand, Inc.,* 678 F.2d 1276, 1282 (5th Cir.1982), *vacated on other grounds,* — U.S. ——, 103 S.Ct. 3104, 77 L.Ed.2d 1360 (1983); *Mumford v. Glover,* 503 F.2d 878 (5th Cir.1974). We are cognizant that our interpretation of *Vaca* conflicts somewhat with the result reached by the Supreme Court in *Plumbers Union v. Borden,* 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638. Nonetheless, given our analysis above, we are convinced that our interpretation is the correct one. *See Smith,* 500 F.2d 741; *Waters,* 427 F.2d at 490. We hold, therefore, that the district judge erred in dismissing counts I, IV, and V if he did so on the ground of lack of jurisdiction,[11] but that he properly dismissed the unfair labor practice claims, counts II and III.

### III

▆▆ The parties agree that the six-month limitations period of section 10(b) of the Act, 29 U.S.C. § 160(b), is applicable.

---

**11.** If the district court's decision was indeed based on this ground, he should have dismissed the amended complaint without prejudice. It is well established that "lack of jurisdiction renders ... [a court] powerless to make a decision on the merits." *Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 488 F.2d 75, 76 (5th Cir. 1973).

*See DelCostello,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476. This is the proper limitations period for both the breach of the duty of fair representation and the breach of the contract claims. *See id.* at ——, 103 S.Ct. at 2293.

The resolution of the statute of limitations issue requires that we first set forth the procedural history of this case. The record shows that on March 23, 1982 Lewis filed his original complaint. The Union filed a motion to dismiss on the grounds that Lewis had failed to exhaust intra-union remedies and to join necessary parties. The Union's motion to dismiss was granted on June 17, 1983,[12] but Lewis was granted leave to file an amended complaint, which he did on July 7, 1983. The amended complaint was virtually identical to the original complaint, alleging the same causes of action in the same words, but in fewer, consolidated counts.

Apparently sometime after Lewis filed his amended complaint, but before the Union filed a responsive pleading, the Union received Lewis' answers to the Union's written interrogatories. Although it is unclear, Lewis probably pinpointed in his answers the dates on which some if not all of the allegedly illegal Union conduct occurred.[13] Based on the dates given in the answers, the Union argues that the six-month limitations period had run on Lewis' claims in both the original and amended complaints.[14]

Lewis argues that the action is timely because, under Fed.R.Civ.P. 15(c), the amended complaint relates back to the original complaint. Therefore, the June 24,

1982 incident also relates back to the original complaint and, hence, the entire action is timely. He also argues that he has alleged a continuing pattern of conduct up until June 24, 1982 so that the original complaint and the amended complaint which relates back are both timely. We agree with Lewis' second argument.[15]

To find Lewis' action timely, we must engage in a two-step analysis. First, we must find that the original complaint was timely filed. Under the facts of this case, it can only be timely if Lewis has alleged a continuing pattern of illegal conduct up until six months prior to March 23, 1982. Second, we must find that the amended complaint was timely filed either because it too alleges a continuing pattern of illegal conduct up until six months prior to July 17, 1983 or it relates back to the original complaint.

In our view, the original complaint is timely because it alleges an ongoing course of conduct by the Union "since February, 1980" of repeatedly refusing to refer Lewis out for employment. The allegations in the complaint are somewhat conclusory. Lewis does not specify dates on which the alleged discrimination occurred or any other particular facts from which a date could be inferred. Nonetheless, we do not believe that the allegations are so conclusory that they do not afford an adequate basis for determining that Lewis has alleged a continuing violation sufficient to toll the statute of limitations until the date on which the original complaint was filed. *See Baker v. F & F Investment,* 420 F.2d 1191, 1198 (7th Cir.), *cert. denied,* 400 U.S. 821,

---

12. It is unclear from the record on what ground the district court granted the motion.

13. The dates of the alleged violations were April 7, 1980, August 21, 1980, August 22, 1980, September —— 1980, October 4, 1980, and June 24, 1982.

14. It appears as if the Union is also arguing that Lewis' amended complaint is not in fact an amended complaint but rather an entirely new complaint. *See Worthams v. Atlantic Life Ins. Co.,* 533 F.2d 994 (6th Cir.1976). We reject this argument noting that the district court granted

the Union's motion to dismiss, but granted leave to Lewis to file an amended complaint, and that both parties and the district court treated it as an amended complaint. *See id.* at 996.

15. We cannot agree with Lewis' first argument because it simply assumes that the amended complaint relates back and erroneously assumes that an amended complaint with its allegations of illegal conduct occurring after the date on which the original complaint was filed can convert an otherwise untimely action into a timely one.

91 S.Ct. 42, 27 L.Ed.2d 49 (1970). As this court has previously stated:

> The statute of limitations does not always begin to run at the first moment where a wrongful invasion of a protected interest might give rise to a cause of action. In such cases, the specific circumstances of the case may lead the court to suspend the operation of the statute.

*Cooper v. United States*, 442 F.2d 908, 912 (7th Cir.1971). The court noted that such circumstances might include fraudulent concealment of facts by the defendant, the continuation of a special relationship between the plaintiff and defendant which offers the possibility of correction of the injury, or continuing wrongful conduct of the defendant toward the claimant which establishes a status quo of continuing injury. The court also stated that it was also important to consider the policies of the particular statute of limitations in question as well as the nature of the wrongful conduct and harm alleged. *Cooper*, 442 F.2d at 911–12.

In this case it is clear that Lewis and the Union have been involved in a continuous relationship since at least February 1980. The Union has absolute control over whether Lewis will be employed. Lewis, in essence, alleges that by virtue of this special relationship, the Union is able to perpetuate a continuing wrong. In effect, Lewis' case is similar to those in which the courts have found a continuing violation on the basis of allegations that a union has participated over a long period of time in racially discriminatory acts against some of its members. *See, e.g., Jamison v. Olga Coal Co.*, 335 F.Supp. 454 (S.D.W.Va.1971).

We conclude based on these facts that Lewis has alleged a continuing violation in the original complaint. Our conclusion is reinforced when we consider "the nature of the wrongful conduct and harm alleged." *Cooper*, 442 F.2d at 912. Lewis essentially claims that the Union has repeatedly failed

to act on his behalf and continues to do so; he notes that this has deprived him of continued employment. He alleges a continuing course of conduct motivated by personal animosity, not one particular instance in which, for example, the Union failed to process a grievance concerning a discharge or promotion. *See, e.g., Jamison*, 335 F.Supp. at 462.

Having decided that Lewis has alleged a timely continuing violation in the original complaint, we find that the amended complaint is itself timely. Its allegations are identical to those found in the original complaint and hence it relates back to March 23, 1982 because its claims arise "out of the [same] conduct, transaction, or occurrence," Fed.R.Civ.P. 15(c), alleged in the original complaint. Moreover, it states a timely continuing violation itself. It is unnecessary for us to determine if that pattern of conduct continued until June 24, 1982 or later because both the original and amended complaints are timely even if the conduct ceased on March 23, 1982.

We are aware that the conclusion we reach may seem at odds with the policies of the six-month limitations period. In *Del-Costello*, the Court stated that the six-month period was appropriate because it provided for the rapid resolution of labor disputes and, at the same time, afforded plaintiffs ample time in which to vindicate their rights. 462 U.S. at 169–70, 103 S.Ct. at 2293. Here, Lewis waited almost two years after he was aware that the Union was allegedly discriminating against him to file a lawsuit.[16] Nonetheless, we have decided that Lewis has alleged a continuing violation from February 1980 until March 1982, and it is clear that Lewis' failure to bring suit against the Union for discriminatory acts in 1980 would not bar him from bringing suit for identical discriminatory acts occurring within the six months prior to March 1982.

---

16. On August 26, 1980 Lewis filed an unfair labor practice charge with the NLRB complaining that the Union was discriminating against him in job referrals. For reasons that are not clear to us, that charge was voluntarily withdrawn in September 1980. Thus, Lewis was aware at least by August 26, 1980 that the Union was discriminating against him in job referrals.

Notwithstanding the foregoing analysis, we hold only that Lewis' complaint should not have been disposed of on a motion to dismiss. We are troubled by the fact that Lewis apparently does not contest the Union's implicit assertion that the six instances of alleged illegal conduct identified by both parties represent the sum total of the alleged violations. Nonetheless, at this early stage in the proceedings, we hesitate to infer from Lewis' silence a concession that no illegal Union conduct occurred between October 4, 1980 and March 23, 1982, when the record is so unclear as to the context in which these particular dates arose, when the statute of limitations is an affirmative defense which may be litigated at trial, See Fed.R.Civ.P. 8, and when it is clearly improper to consider on a motion to dismiss facts not contained in the complaint.

In this regard, we find it significant that Lewis claims essentially that the Union breached its duty of fair representation by failing to act. In our view, it is difficult (if not impossible) for a plaintiff alleging "negative conduct," and not affirmative discriminatory acts, to identify before discovery or trial all of the specific dates on which a defendant may have acted illegally. Depending upon the nature of the evidence ultimately presented at trial or other information adduced through pretrial discovery, Lewis may very well be able to prove numerous instances of illegal conduct as recent as the time of the filing of the original complaint.

■ Thus, we hold that Lewis has alleged a continuing violation sufficient to toll the statute of limitations at least until March 23, 1982. Nonetheless, on remand the district court may find that the continuing violation stopped prior to six months before the original complaint was filed. If the court so finds, the action is time-barred.

### IV

The district court may also have granted the Union's motion to dismiss on the ground that Lewis failed to exhaust available intra-union remedies before filing suit against the Union. Article III, Section 3(h) of the Uniform Local Union Constitution of the Laborers' International Union and Article XVI of the International Union Constitution require members to exhaust all intra-union procedures before filing suit. Article XII of the Local Union Constitution sets forth the intra-union procedures. Lewis concededly did not resort to these procedures. Notwithstanding, Lewis argues that the district court should not have required him to exhaust available intra-union remedies before filing this lawsuit.

■ As a general rule, an employee cannot bring suit against the union for breach of the duty of fair representation unless he has first attempted to exhaust intra-union procedures. A court has discretion, however, to excuse an employee's failure to exhaust. *Clayton v. UAW*, 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981). In *Clayton* the Supreme Court enunciated three factors to guide the court in the exercise of that discretion: (1) whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; (2) whether the intra-union appeals procedure would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks; and (3) whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may excuse the plaintiff's failure to exhaust. Moreover, discretion whether to require exhaustion is not limited to a consideration of these three factors. *Local Union No. 1075 v. United Rubber, Cork, Linoleum & Plastic Workers of America*, 716 F.2d 182 (3d Cir.1983). In fact, in considering whether exhaustion was required, a court must look to the reasonableness of imposing it under the circumstances of the situation. *Id.* at 187.

■ On the basis of the record before us, we believe we should decline to exercise our discretion to require Lewis to exhaust his intra-union remedies. In a

case involving failure to exhaust, the plaintiff has the burden of alleging facts showing that the intra-union procedures are inadequate under *Clayton*. *Hayes v. Brotherhood of Ry. & Airline Clerks*, 734 F.2d 219, 221 (5th Cir.1984); *Monroe v. International Union, UAW*, 723 F.2d 22, 25 (6th Cir.1983). In our view, Lewis has satisfied that burden. He alleges that the Union failed to provide him with copies of the Union Constitution and bargaining agreement. The Union correctly points out that the failure to provide Lewis with such materials does not excuse Lewis from exhausting his intra-union remedies. *See Newgent v. Modine Mfg. Co.*, 495 F.2d 919, 927–28 (7th Cir.1974). Lewis stated, however, in his brief and in argument before this court and the district court that those union officials who discriminated against him are the very same officials through whom Lewis would have had to process his claims, and the Union does not contest this fact. Although these allegations do not explicitly appear in Lewis' complaint, they can be inferred from Lewis' other allegations concerning the personal animosity and improper motives of the Union officials. The inference is a bit tenuous, but it is not unreasonable in light of liberal pleading rules and a policy of determining actions on their merits, as well as on the proofs, and not on the pleadings. 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1357 at 599 (1969). We are also mindful that the courts should construe an employee's complaint against his union for arbitrary and bad faith conduct to guard against its dismissal.[17] *See Czosek v. O'Mara*, 397 U.S. 25, 27, 90 S.Ct. 770, 772, 25 L.Ed.2d 21 (1970); *In re Carter*,

618 F.2d at 1104. As a result, we hold that Lewis has satisfied the first *Clayton* factor by alleging that he would not have been able to obtain a fair hearing because the Union officials who would have been involved in the intra-union appeals procedures were the same ones who allegedly discriminated against him.[18] *See Hayes v. Brotherhood*, 727 F.2d 1383, 1386 (5th Cir.), *reh'g denied*, 734 F.2d 219 (1984); *Varra v. Dillon Companies*, 615 F.2d 1315, 1316–17 (10th Cir.1980); *Waters*, 427 F.2d at 490. We emphasize that our holding is premised in large part upon the fact that this issue was resolved by a motion to dismiss. We believe that in this case it is unreasonable to impose an exhaustion requirement solely on the basis of the pleadings when it is clear that the issue of union hostility has been raised and that the resolution of that issue requires further factual development. *See Clulow v. Oklahoma*, 700 F.2d 1291, 1296 (10th Cir.1983). Nonetheless, our ruling does not foreclose a later finding by the district court on remand, after more facts have been elicited, that Lewis unjustifiably failed to exhaust his intra-union remedies.

## V

In count V of his amended complaint, Lewis claims punitive damages for the Union's breach of the duty of fair representation.[19] The Union argues that *Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698, forecloses the recovery of punitive damages in all fair representation suits. We agree.

In *Foust* the Court held that punitive "damages may not be assessed against a

---

**17.** To the extent that there is any ambiguity concerning these allegations of futility, Lewis, on remand, should be allowed to amend his complaint to specifically allege these facts. *See Waters*, 427 F.2d at 490.

**18.** Because we find that Lewis has satisfied at least one of the *Clayton* factors, we do not need to address Lewis' other arguments supporting his claims that he is not required to exhaust those procedures.

**19.** An improper claim for punitive damages is not a ground for dismissing the entire com-

plaint as are the other three grounds already discussed. Rather, it is only a ground for striking that particular claim from the complaint. Nonetheless, even though our resolution of the punitive damages question does not affect our conclusion that the district court erroneously dismissed the entire complaint, we have decided to address this question in order to provide added guidance to the district court on remand. *See Mozee v. Jeffboat, Inc.*, 746 F.2d 365 at 370 (7th Cir.1984).

union that breaches its duty of fair representation by failing properly to pursue a grievance." 442 U.S. at 52, 99 S.Ct. at 2128. Lewis thus claims that *Foust* is only applicable where the charge is that a union mishandles a grievance and not where the plaintiff claims union officers act with personal animosity.

Even though *Foust* was decided in the specific context of the mishandling of the plaintiff's grievance, we do not believe that the Court intended its decision to be so narrowly construed. First, the reasoning of the Court in *Foust* compels a broad reading of its holding. In that case the Court determined that permitting any punitive damage awards threatened to "impair the financial stability of unions and unsettle the careful balance of individual and collective interests which [the Supreme] Court has previously articulated in the unfair representation area." 442 U.S. at 48, 99 S.Ct. at 2126. Although it is true that the Court stated "[a]dditionally, the prospect of punitive damages [against unions] ... could curtail the broad discretion ... afforded unions in handling grievances," *id.* at 51, 99 S.Ct. at 2127, most of the Court's analysis focused on a consideration of the union's difficult duty of balancing individual and collective interests in *all* matters undertaken pursuant to its status as the exclusive bargaining representative. *See id.* at 48–52, 99 S.Ct. at 2125–27.

Second, Justice Blackmun writing for four members of the Court, concurred only in the result precisely because, in his view, he felt the majority had adopted a *per se* rule prohibiting recovery of punitive damages in all fair representation lawsuits. The majority made no objection to this broad characterization of its holding, but specifically denied another suggestion by the concurrence that its holding extended to cases arising under the Labor Management Relations and Disclosure Act, 29 U.S.C. § 411. *See Foust*, 442 U.S. at 47 n. 9, 99 S.Ct. at 2125 n. 9.

Finally, *Foust* made clear that punitive damages were not recoverable from a union in fair representation suits ·charging mishandling of a grievance even if the union's conduct in so doing was malicious, egregious, or motivated by personal animosity toward the plaintiff. In our judgment the Court could not have intended to permit the recovery of punitive damages merely because the union is discriminatorily administering one contract provision, such as the referral clause, rather than the grievance provision.

Indeed the Court's broad reasoning suggests to us that the only instance in which a union member should be able to recover punitive damages is when a union's egregious conduct is entirely remote from its duties as an exclusive bargaining agent; but then that union member would not be able to raise a claim for breach of the duty of fair representation because the union would not be acting in its representative capacity.

■ Based on these reasons, we believe that the Court in *Foust* meant to formulate a blanket prohibition ·against the recovery of punitive damages in all fair representation suits.[20] We can see no rational basis here for creating an exception to the Court's broad holding in *Foust*. And even though Lewis is correct that *Foust* was decided by a slim majority (5–4), and one member of that majority has since left the Court, that is no basis on which this court can refuse to follow the clear, but broad, decision in *Foust*. Thus, the district court properly dismissed count V of the amended complaint.

## VI

We conclude that counts II and III stating claims for an unfair labor practice are preempted by the NLRB, and were proper-

---

**20.** The Fifth, Eighth, and District of Columbia Circuits appear to have adopted this position as well. *See Quinn v. Digiulian*, 739 F.2d 637, 647 (D.C.Cir.1984); *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1216 (8th Cir.), *cert. de-* *nied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981); *Wells v. Southern Airways, Inc.*, 616 F.2d 107, 109 n. 1 (5th Cir.), *cert. denied*, 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 78 (1980).

ly dismissed by the district court. We further conclude that counts I, IV, and V stating claims for breach of contract and breach of the duty of fair representation are not preempted and that section 301(a) of the LMRA provides subject matter jurisdiction, but that count V was properly dismissed under *Foust*. Finally, we conclude that we are unable to determine beyond a doubt, from the record as it stands now, that Lewis' claims are time-barred or that Lewis should have been required to exhaust intra-union remedies before bringing this lawsuit. Accordingly, we reverse the district court's dismissal of counts I and IV of plaintiff's amended complaint and remand for further proceedings not inconsistent with this opinion.