William NOBLE, Jr.; and Thomas J. PAYNE, Plaintiffs–Appellants,

v.

**CHRYSLER MOTORS CORPORATION, JEEP DIVISION; and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local No. 12, Defendants–Appellees.**

No. 93–3812.

United States Court of Appeals, Sixth Circuit.

Argued June 21, 1994.

Decided Aug. 22, 1994.

Terry J. Lodge (argued and briefed), Toledo, OH, for plaintiffs–appellants.

Thomas A. Dixon (argued and briefed), Kimberly S. Stepleton, Eastman & Smith, Toledo, OH, for Chrysler Motors Corp.

Joan Torzewski (briefed), John D. Franklin (argued and briefed), Lackey, Nusbaum, Harris, Reny & Torzewski, Toledo, OH, for Intern. Union, United Automobile, Aerospace

and Agricultural Implement Workers, Local 12.

Before: JONES and RYAN, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

Plaintiffs–Appellants, William Noble Jr., and Thomas J. Payne, have appealed the magistrate judge's summary judgment[1] in favor of defendants-appellees, Chrysler Motors Corporation ("Chrysler") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local No. 12 (UAW) on plaintiffs' hybrid § 301 claim alleging breach of the collective bargaining agreement (CBA) and breach of the duty of fair representation in violation of the Labor–Management Relations Act, 29 U.S.C. § 185. On June 15, 1992, plaintiffs filed a complaint alleging that Chrysler breached the CBA by improperly fixing the effective date of their seniority rights and that the UAW breached its duty of fair representation by failing to represent plaintiffs in their seniority dispute. The magistrate judge entered summary judgment in favor of the defendants, concluding that plaintiffs' claims were barred by the applicable statute of limitations. This timely appeal followed.

In August 1983, Noble commenced working at Chrysler on the engine assembly line. A short time later, he was transferred to the mechanical repair department and then, in early 1984, he was temporarily laid off due to a work shortage. He returned to work on May 4, 1984, as a temporary upgrader/industrial truck mechanic in Department 275. Payne had been working at Chrysler since 1979, first as a sheet metal specialist and then as a non-skilled mechanic. In April 1984, he was laid off from Chrysler but, like plaintiff Noble, he returned to Chrysler as a temporary upgrader/industrial truck mechanic in Dept. 275.

Upgraders are mechanics assigned to the Skilled Trades Department to assist journeyman mechanics. Upgraders accrue seniority within that upgrader classification from the date of entry into that job assignment but they do not acquire any seniority in the skilled trades department as journeyman mechanics. Upgraders with eight years of practical experience at the trade, however, are eligible to fill a vacant journeyman position if they can provide satisfactory proof of that experience.

Noble and Payne continued to work as temporary upgraders in Dept. 275 until July 16, 1984, when they provided the required documentation of experience and were subsequently hired as journeymen by Chrysler. They received a pay increase and their entry date into the journeyman classification for seniority purposes was set at July 16, 1984. This date underlies the dispute in the instant appeal. Plaintiffs have contended that their entry date for purposes of seniority should have been the date they were hired into the skilled trades department as temporary upgraders. They testified that they believed that they would automatically become journeymen once they had documented their eight years of experience as auto mechanics. They further testified that it was their understanding that once the verification process was completed and they were accorded journeyman status, their seniority date would be retroactively dated to their original date of hire as upgraders.

The dispute arose after two other employees, Robert Anderson and Joseph Sancrant, were placed ahead of plaintiffs on the journeyman seniority list even though they had been hired as temporary upgraders after plaintiffs had commenced employment as upgraders. The two individuals were given earlier seniority dates than plaintiffs because they had submitted their documentation satisfying the experience requirements prior to plaintiffs. Plaintiffs charged that a union official had intentionally impeded plaintiffs' documentation submission to aid Anderson and Sancrant.

At some time between July and November 1984, which is not reflected in the record, the seniority controversy was brought to the at-

---

1. The parties have consented to entry of final judgment by the magistrate judge pursuant to 28 U.S.C. § 636(c).

tention of the union steward, Michael Dandar, as required by the CBA. In any event, during November 1984, Noble met with Dandar and James Sancrant, the chief union steward to discuss the seniority dispute. Sancrant informed Noble that official union policy fixed an individual's journeyman seniority on the date on which experience documentation was presented and received by the company.

A second meeting between plaintiffs and Dandar occurred during November 1984 to discuss the controversy. On this occasion, another employee, Eugene Molnar, complained that his journeyman's seniority date should have preceded that of plaintiffs because his experience documentation predated plaintiffs' date of filing. To resolve this dispute, plaintiffs along with several other employees signed a company memorandum which acknowledged their seniority date as July 16, 1984. Attached to this memorandum was a complete seniority list which disclosed that Anderson and Joseph Sancrant's journeyman seniority preceded plaintiffs' seniority status by approximately one month. In deposition, Noble testified that he signed the above memorandum under duress and only in the context of the Molnar dispute. He argued that he did not intend it to affect his seniority grievance with Anderson and Sancrant.

From 1984 to 1988, plaintiffs continued to press the seniority issue with other union officials without success. Finally, in 1988, plaintiffs approached Randy Mussehl, a newly-elected union steward, who reviewed the departmental files and advised the plaintiffs that he would not pursue their claims because they were no longer timely. Following Mussehl's refusal to process the grievance, plaintiffs filed a written grievance with the union on October 3, 1990, which was presented to its Seniority Committee. On December 19, 1991, the committee issued a written decision affirming plaintiffs' seniority date of July 16, 1984. Plaintiffs appealed this decision to the union's Appeals Committee which conducted a hearing on May 29, 1992. The Appeals Committee affirmed the decision of the Seniority Committee and concluded that plaintiffs' journeyman status was properly

dated as July 16, 1984, and not their date of entry into the skilled trade department as temporary upgraders in May 1984. Plaintiffs then filed this action which forms the basis for this appeal.

In the instant appeal, the magistrate judge entered summary judgment in favor of Chrysler and UAW after determining that plaintiffs' claims were barred by the statute of limitations. Appeals from grants of summary judgment are reviewed under a *de novo* standard. *EEOC v. University of Detroit,* 904 F.2d 331, 334 (6th Cir.1990). The court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Massey v. Exxon Corp.,* 942 F.2d 340, 342 (6th Cir.1991). The evidence must be viewed in a light most favorable to the nonmoving party, but the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). There must be a genuine issue of material fact. *Middleton v. Reynolds Metals,* 963 F.2d 881, 882 (6th Cir.1992). A fact is material if it will "affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. Hence, "a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion. If, after a sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989) (adopting the "New Era" of summary judgment as defined by *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

In *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court fixed a six-month statute of limitations period for filing claims under § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185. A claim under § 301 accrues " 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.' " *Robinson v. Central Brass Mfg. Co.,* 987 F.2d 1235, 1239 (6th Cir.) (quoting *Adkins v. International Union of Electrical, Radio & Machine Workers,* 769 F.2d 330, 335 (6th Cir.1985)), *cert. denied,* —— U.S. ——, 114 S.Ct. 92, 126 L.Ed.2d 60 (1993). The determination of the accrual date is an objective one: "the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue." *Chrysler Workers Ass'n v. Chrysler Corp.,* 834 F.2d 573, 579 (6th Cir.1987), *cert. denied,* 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988).

In the case at bar, plaintiffs filed their complaint on June 15, 1992; hence, the action was timely only if it accrued after December 15, 1991. The magistrate judge determined that, at the latest date, plaintiffs should have known in 1988 of their potential cause of action when Mussehl, their union steward, refused to pursue the grievance as untimely. The magistrate judge further observed that a number of other instances prior to 1988 should also have placed them on reasonable notice that a legal claim had accrued, most particularly the memorandum signed by both plaintiffs on November 30, 1984, whereupon they acknowledged that their journeyman status was fixed as July 16, 1984. Construing the facts in plaintiffs' favor, this court concludes that the magistrate judge properly determined that there was no issue of material fact concerning the accrual date of plaintiffs' claim.

▮ In order to avoid the statute of limitations bar, plaintiffs have made several arguments which they have asserted either toll or defeat the limitations defense. First, plaintiffs have contended that the magistrate judge should have applied the "continuing violation" doctrine to find that their claims had not been barred by the statute of limitations. The continuing violation doctrine has been applied by this and other courts upon a finding that the initial actionable injury continued beyond the expiration of the limitations period. *See, e.g. Gandy v. Sullivan County, Tennessee,* 24 F.3d 861 (6th Cir. 1994); *Roberts v. North American Rockwell Corp.,* 650 F.2d 823 (6th Cir.1981). *See also Lewis v. Local 100, Laborers' International Union,* 750 F.2d 1368 (7th Cir.1984); *Metz v. Tootsie Roll Indus.,* 715 F.2d 299 (7th Cir. 1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984).

Plaintiffs have urged this court to conclude that the conduct of the defendants constituted a continuing violation in two ways. First, they have argued that a series of discrete violations continued between 1984 and 1990 during which period union officials promised to file or follow-up on plaintiffs' seniority grievance which they failed to do. They have also argued that the seniority policy which dated journeyman seniority from the submission of prior work experience documentation rather than the date of entry into the skills trade department as upgraders had a continuing injurious effect.

Although plaintiffs have correctly observed that the continuing violation doctrine can be invoked to extend a court's jurisdiction over violations occurring outside the limitations period, their case simply does not fall within its confines. In *Roberts,* a panel of this court applied the continuing violation doctrine when it found that the defendant had an ongoing policy of refusing to hire women and that plaintiff had continually reapplied for employment at dates both within and outside the limitations period. *Roberts,* 650 F.2d at 827. Similarly, in *Lewis,* the Seventh Circuit decided that the plaintiff had alleged a continuing violation because his union had repeatedly refused to refer him for job assignments. The court distinguished Lewis' situation from a "particular instance in which, for example, the Union failed to process a grievance concerning a discharge or promotion." *Lewis,* 750 F.2d at 1379. Plaintiffs, however, have not alleged a series of violations that

include both timely and untimely instances of actionable misconduct like the plaintiffs in *Roberts* and *Lewis*, but rather their claim is similar to the type of claim that has been rejected by the *Lewis* court as a continuing violation: the failure of the union to process a grievance concerning a promotion.

The Seventh Circuit's decision in *Metz* is also instructive. In *Metz*, the plaintiff was discharged for failing to return to work after an injury. After she notified the union that she thought her discharge was not for "just cause," the union failed to take any action beyond notifying the company by letter that the plaintiff's discharge violated the collective bargaining agreement. Over a year later, plaintiff subsequently filed suit claiming breach of the duty of fair representation and breach of the CBA. In an attempt to comply with the limitations period, she argued that the union's inactivity constituted a continuing violation. In addressing her argument, the Seventh Circuit observed that the Supreme Court had distinguished two types of continuing violation situations.

> The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely "evidentiary," since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice.

*Metz,* 715 F.2d at 305 (quoting *Local Lodge No. 1424, International Association of Machinists v. N.L.R.B.*, 362 U.S. 411, 416–17, 80 S.Ct. 822, 826–27, 4 L.Ed.2d 832 (1960) (footnote omitted)). The Seventh Circuit found that the plaintiff's alleged violation was of the second type—i.e., that it was dependent upon an unfair labor practice outside the statute of limitations. The court further concluded that the union's inactivity in pursuing the grievance was not an unfair labor practice by itself, but rather only became "cloak[ed] with illegality" by reference to the union's failure to pursue the grievance beyond sending a letter. Because plaintiff did not file her complaint until over a year later and did not allege any other unfair labor practice except for the failure to pursue the grievance, the court refused to apply the continuing violations doctrine and found her case barred by the six-month statute of limitations. *Metz,* 715 F.2d at 306.

The situation in the instant appeal is similar to *Metz*. Plaintiffs have alleged a breach of the union's duty of fair representation based upon its failure to pursue their seniority grievance. However, they have not alleged any union misconduct within the limitations period but rather have relied upon the union's inactivity in pursuing their grievance. As previously recognized, the latest date at which plaintiffs should have known of the union's breach was in 1988 when the union steward refused to pursue their claim. The union's failure to process the grievance after 1988, standing alone, did not constitute an unfair labor practice, but only became an unfair labor practice when viewed in conjunction with conduct that occurred outside the limitations period. This court concludes that plaintiffs have not proven a continuing violation. Accordingly, this assignment of error is without merit.

■ Plaintiffs next contended that the statute of limitations was equitably tolled because of the union's misrepresentations concerning the status of their seniority dispute. In order to support an equitable tolling, plaintiffs must prove that the defendants fraudulently concealed the fact that their seniority dispute was no longer being pursued. In *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975), this circuit has defined the three elements necessary to prove fraudulent concealment:

(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.

Plaintiffs have failed to meet their burden. They have not alleged any facts that would prove their failure to discover the basis for their cause of action. Indeed, the record clearly demonstrates that plaintiffs should have known of their cause of action sometime during 1988 when the union steward refused to pursue their grievance. Moreover, plaintiffs have failed to allege any facts that would exhibit their due diligence in discovering the basis for their claim. Accordingly, this court concludes that plaintiffs have failed to prove an equitable tolling of the statute of limitations.

As their last assignment of error, plaintiffs have argued that defendants have waived their right to assert a statute of limitations defense because they failed to object to the untimely filing of plaintiffs' 1990 grievance. This argument was not presented to the district court and will not be considered for the first time by this court on appeal. *Roush v. KFC National Mgmt. Co.*, 10 F.3d 392 (6th Cir.1993); *Young v. Langley*, 793 F.2d 792 (6th Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986). Plaintiffs have claimed that they did raise this issue below because they noted in a footnote that defendants did not address the untimeliness issue in rejecting the 1990 grievance. The observation of this fact in a footnote is not a legal argument of waiver and is insufficient to preserve the issue for appeal. Plaintiffs' final assignment of error is without merit.

Accordingly, for the reasons stated, the magistrate judge's decision is hereby **AF-FIRMED.**