NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0355n.06
Filed: May 17, 2006

No. 05-1850

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

JERRY WILLIAMSON, et al.,

      Plaintiffs-Appellants,

v.

LEAR CORPORATION,

      Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

_____/

Before:      MARTIN, GUY, and CLAY, Circuit Judges.

      BOYCE F. MARTIN, JR., Circuit Judge. In this case, the plaintiffs asserted a hybrid action under Section 301 of the Labor Management Relations Act. "A hybrid section 301 action involves two constituent claims: breach of a collective bargaining agreement by the employer and breach of the duty of fair representation by the union." *Garrison v. Cassens Transp.*, 334 F.3d 528, 538 (6th Cir. 2003) (citation omitted). The district court granted summary judgment in favor of the defendants on two grounds: (1) that the union did not breach its duty of fair representation; and (2) that the plaintiffs failed to file suit within the six-month statute of limitations period. The plaintiffs appeal on both grounds. For the following reasons, we affirm the district court's judgment.

**I.**

      The facts are largely undisputed. The plaintiffs are 163 current and former employees of the Lear Corporation and were members of Local 174 of the International Union, United Automobile,

Aerospace, and Agricultural Implement Workers of America (UAW). The plaintiffs were employed by Lear at one of its manufacturing plants in Romulus, Michigan (Rom II). Rom II was used exclusively to manufacture products that were sold to Ford Motor Company. Lear also operated another plant in Romulus, Michigan, "Rom I," which manufactured products that were sold to Daimler Chrysler. The Rom I employees were also represented by UAW Local 174, but their employment with Lear was governed by a separate collective bargaining agreement.

As a result of the loss of all Ford business, Lear planned to close the Rom II facility. In March 2002, Lear negotiated a Plant Closing Memorandum of Understanding, ("PCM"), with the UAW. The PCM contained the following provision: "In the event the Company reopens the Plant within two (2) years from the date of the plant closing; the Company will recall employees on the basis of seniority established in the Collective Bargaining Agreement." The PCM also terminated the Rom II - UAW collective bargaining agreement as of April 25, 2003. The PCM further stated that: "Any alleged violation of this closing agreement, adherence to and interpretation of will be subject to final and binding arbitration through the American Arbitration Association rules." Rom II ceased production by December 2002. Most of the affected employees were able to obtain other UAW represented employment with Lear, including at the Rom I facility.

On April 17, 2003, Lear reiterated the provisions of the PCM in a letter. The letter stated: "If Lear reopens the Romulus II Plant as a Production facility within two years from April 25, 2003; the Company will recall employees on the basis of seniority. This would not apply in the event Lear chooses to utilize the space as a warehouse, storage or other non-production facility." By the end of 2003, Lear's production for Daimler Chrysler had increased and Lear needed additional

production space. Lear determined that it would move the Rom I operation and workforce into the building that was previously used for Rom II production, because the Rom II facility was larger and would satisfy the need for additional production space. To accomplish this move, Lear sold both the Rom I and Rom II facilities and leased back Rom II.

In a December 2003 letter to the UAW, Lear stated that it was "not reopening the Romulus II Plant." On January 9, 2004, two plaintiffs, Jerry Williamson and Donnie Turner, wrote a letter to the UAW expressing concern that the PCM was being violated. Then, in a January 12, 2004 memorandum to all Rom I employees, the UAW explained to workers that moving the Rom I production into the Rom II facility did not constitute a "reopening" of Rom II: "Lear has not decided to reopen Plant II. They have decided to transfer work being manufactured for the Warren Truck Assembly Plant from Rom I." By this point, all but twenty to twenty-five of the former Rom II workers were rehired at Rom I, other Lear plants, or refused recall under the PCM.

On January 29, 2004, the UAW responded to the plaintiffs' letter and explained its position that Rom II was not "reopening," but that Rom I work was simply being transferred into the Rom II facility. On March 2, Lear sent all Rom I employees (which included most of the plaintiffs) a memorandum reiterating its position that the Rom II facility was not "reopened" under the terms of the PCM. On March 24, the plaintiffs received another letter from the UAW's counsel reiterating its position that the Rom II plant was not "reopened" under the terms of the PCM. This letter instructed the plaintiffs to appeal pursuant to the UAW Constitution if they were dissatisfied with the union's position. Between March 31 and April 13, the plaintiffs filed grievances with Lear, but never pursued UAW appeals. On June 11, 2004, Lear refused to grieve the plaintiffs' claims

because the collective bargaining agreement expired a year earlier.[1]  Finally, on October 13, 2004,

the plaintiffs filed suit in federal district court.  On December 28, 2005, the plaintiffs demanded

arbitration under the PCM.

The district court granted summary judgment to the defendants on two grounds.  First, the

court concluded that the plaintiffs could not prove, as a matter of law, that the UAW breached its

duty of fair representation.  Second, the court also determined that the plaintiffs' cause of action

accrued on January 29, 2004, with the UAW's letter explaining its interpretation of the PCM, and

therefore the plaintiffs' suit, filed on October 13th, was outside of the six-month limitations period.

The plaintiffs now appeal.

## II.

### A.    *Standard of Review*

This Court reviews a district court's grant of summary judgment *de novo*.  *Bennett v.

Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005).  Summary judgment is only appropriate "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The burden is generally

on the moving party to show that no genuine issue of material fact exists, but that burden may be

discharged by "showing — that is, pointing out to the district court — that there is an absence of

---

[1]The collective bargaining agreement between Lear and the UAW states that the time limit
for filing grievances with Lear is "five (5) working days, excluding holidays, Saturdays and Sundays
from the time of the alleged violation or from such time as the violation could reasonably have been
known to the aggrieved."

evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted). In reviewing a motion for summary judgment, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence is viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

B.      *Section 301 Hybrid Suits*

As stated earlier, the plaintiffs filed a hybrid action under Section 301 of the Labor Relations Management Act, 29 U.S.C. § 185. "A hybrid section 301 action involves two constituent claims: breach of a collective bargaining agreement by the employer and breach of the duty of fair representation by the union." *Garrison*, 334 F.3d at 538. "[T]o recover against *either* the Company *or* the Union, [the plaintiffs] must show that the Company breached the Agreement *and* that the Union breached its duty of fair representation. Unless [the plaintiffs] demonstrate[] *both* violations, [they] can not succeed against either party." *Bagsby v. Lewis Bros., Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987) (emphases in original); *see also DelCostello v. Teamsters*, 462 U.S. 151, 164 (1983) (noting that the two claims are "inextricably interdependent").

C.      *Statute of Limitations*

We agree with the district court that the suit was filed late, although we reach that conclusion on slightly different reasoning. Although Congress did not include a statute of limitations in Section 301, the Supreme Court has "borrowed the six-month statute of limitations of NLRA § 10(b)." *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1238 (6th Cir. 1993) (citing *DelCostello*, 462 U.S. at 151). In *DelCostello*, however, the Supreme Court did not "address the issue of when a cause of action accrues in a hybrid § 301 claim and when the statute of limitations begins to run." *Id.* To

answer this question, this Court noted that "[b]efore an employee may bring a § 301 claim against an employer for dismissing him in violation of the collective-bargaining agreement, the employee first must exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement." *Id.* at 1239. This Court further noted that generally, "a claim accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Id.* (alterations and citations omitted). Citing *Proudfood v. Seafarer's International Union*, the Court noted that the Eleventh Circuit has held that the separate actions in a hybrid suit accrue simultaneously, and that "the timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action or should have known of the employer's final action, whichever occurs later." 779 F.2d 1558, 1560 (11th Cir. 1986); *compare Gately v. Textron, Inc.*, No. 96-6208, 1997 WL 618825, *2 (6th Cir. Oct. 6, 1997) (unpublished) ("A prospective § 301 hybrid claimant need not have official notification of a union's possible breach of its duty of fair representation in order for rights to accrue for statute of limitations purposes.").

Later, in *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1000 (6th Cir. 1994), the Court clarified that "[t]he determination of the accrual date is an objective one: 'the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue.'" *Id.* at 1000 (quoting *Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 579 (6th Cir. 1987)); *see also Ratkosky v. United Transp. Union*, 843 F.2d 869, 873 (6th Cir. 1988) ("As a general rule, the limitations period begins to run when the potential plaintiff knows or should have known of the

union's alleged breach of its duty of fair representation."). Thus, we focus upon two points in time.

The first is the time at which the plaintiffs should have known that their right to sue accrued. At this

point in time, the statute of limitations clock starts. The second time period is any time that the

limitations period may be tolled — *i.e.*, where the clock is temporarily stopped.

In *Robinson*, we reasoned that "[a]lthough the causes of actions against both defendants

accrued simultaneously, it does not necessarily follow that the statutes of limitations for the two

interdepedent claims began to run simultaneously." 987 F.2d at 1239. Stated another way, although

the actions may accrue at the same time, the statute of limitations may be tolled while employees

pursue internal appeals. *Id.* Regarding tolling, we held that

> in order for the statute of limitations to be tolled, the internal union appeal must be
> able to afford the claimant *some* relief from the defendant. Tolling the statute of
> limitations while a claimant pursues *completely* futile internal union remedies does
> not serve the federal interests discussed in *DelCostello* and *Clayton* and is unfair to
> the defendant. On the other hand, we recognize that in some cases it may be difficult
> for an employee, even after the exercise of due diligence, to determine that the
> internal union remedies are completely futile and that this difficulty must be
> considered by the court. Second, we emphasize that whether to toll the limitations
> period is a question within the discretion of the district court. Thus, we are reluctant
> to set out bright line rules. Each case must be analyzed on its own facts and in light
> of the three factors stressed in *Clayton* and the four-part test outlined in *Frandsen*.

*Id.* at 1242.[2]

---

[2]The four factors mentioned are from *Frandsen v. Brotherhood of Railway, Airline, and Steamship Clerks, Freight Handlers, Express and Station Employees*, 782 F.2d 674 (7th Cir. 1986). This Court described them as (1) "a 'no tolling' rule would contravene the dual federal policy of promoting private resolution for disputes through internal union remedies and ensuring a judicial forum to resolve disputes"; (2) "a 'no tolling' rule would create an incentive for plaintiffs to bring suit in federal court before seeking internal union remedies as a cautionary measure"; (3) "in *Clayton* the Supreme Court did not divest the district courts of discretion to decide whether or not exhaustion is required under specific circumstances"; and (4) "an internal appeals process need not provide complete relief in order to be fruitful to the plaintiff or beneficial to the judicial system."

In this case, the district court found that the plaintiffs' action would have accrued on January 29, 2004, when the plaintiffs learned that the UAW's position was that Rom II was not "reopened." The plaintiffs claim, however, that their suit accrued on June 11, 2004, when they learned that Lear would not grieve their claims (and therefore a lawsuit filed on October 13th would be within the limitations period). The defendants point out, however, that the plaintiffs did not file these grievances with Lear until early April 2004. Pursuant to the collective bargaining agreement — which had expired in April 2003 — grievances were required to be filed within five working days of the alleged violation. The plaintiffs knew of Lear's and the UAW's interpretation of the PCM by January 29, 2004, making the grievance filings untimely. Moreover, the plaintiffs had notice from Lear of its position no later than the March 2 memorandum and likely earlier because production began in the Rom II facility in January. Thus, we reject the plaintiffs' argument that the action did not accrue until June 11. Regardless of the precise date of accrual — whether it be January 29, as the district court found, March 2 when the plaintiffs received the Lear memorandum, or March 29, when the plaintiffs received another response from the UAW — the plaintiffs filed suit on October 13, and thus, the suit is timely only if there was tolling.

On this point, the plaintiffs claim that the limitations period was tolled while they pursued the UAW's appeal procedures. In the alternative, the plaintiffs claim that they were no longer members of the UAW and therefore no longer had appeal rights under the UAW Constitution. For purposes of analysis, we first consider the plaintiffs claim that the limitations period was tolled during the time in which they pursued the UAW's internal appeal process. This claim is easily

---

*Robinson*, 987 F.2d at 1241-42 (discussing *Frandsen*).

rejected, however, as the plaintiffs did not comply with the procedural requirements of the UAW's

appeal process. Under the UAW Constitution, the plaintiffs had a right to appeal their union's

refusal to demand arbitration under the PCM. Instead of appealing the initial denial on January 29,

2004, as is required under the UAW Constitution, the plaintiffs simply sent another letter to the

UAW President, Ron Gettelfinger, stating their position. The district court determined that the

statute of limitations was not tolled between January 29 (the date of accrual) and March 24, because

any internal union appeals would have been "*completely* futile." Without expressing any opinion

on whether internal appeals would have been "completely futile" under the case law, we conclude

that whether this time period is tolled or not has no bearing on the analysis. Even if the time period

were tolled, and the sixth-month limitations period began on March 24, the time within which to file

suit would still have expired on September 24. The plaintiffs filed suit on October 13.

The plaintiffs also filed grievances with Lear in early April 2004. The collective bargaining

agreement entitling them to do so, however, expired in April 2003. Even if the CBA were still in

effect, these grievances did not comply with the five day statute of limitations. By the time the

plaintiffs filed their grievances with Lear, the company had been in production at Rom II for three

months and had issued several letters and memoranda consistently explaining its position that Rom

II was not "reopened." The district court found that tolling was not appropriate with regard to

pursuing remedies against Lear, and we agree.

The plaintiffs also make the claim that they were no longer members of the UAW and

therefore no longer had appeal rights under the UAW Constitution. This fact apparently applies only

to plaintiff Turner, and not the other 162 plaintiffs. Moreover, the UAW informed the plaintiffs that

they could appeal under the UAW Constitution, but the plaintiffs simply failed to do so. The plaintiffs' claim is also inconsistent with their position on accrual and tolling and seems self defeating. If the plaintiffs had no right to appeal UAW decisions, and they knew this fact, then they cannot simultaneously claim that there should be tolling while they pursued internal appeals.

We therefore hold that the plaintiffs' suit is barred by the statute of limitations.

D.      *Whether the UAW Breached its Duty of Fair Representation*

Although we need not reach the issue, we also conclude that the plaintiffs' claim would fail on the merits. The plaintiffs allege that the UAW breached its duty of fair representation when it failed to represent them and demand arbitration under the PCM. In order to establish a breach of the union's duty, the plaintiffs must show that the UAW's "conduct toward a member of the collective bargaining unit [was] arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). "Each of these wrongs is mutually independent, meaning that the three named factors are three separate and distinct possible routes by which a union may be found to have breached its duty." *Garrison*, 334 F.3d at 538 (internal quotation marks and citation omitted). "Actions for a union's breach of its duty of fair representation depend for their rationale on the union's otherwise-complete control over the handling of an employee's grievance." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994). "Just as . . . fiduciaries owe their beneficiaries a duty of care as well as duty of loyalty, a union owes employees a duty to represent them adequately as well as honestly and in good faith." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 75 (1991) (citations omitted).

i.      *Whether the UAW's Actions Were Arbitrary*

The district court relied on this Court's explanation of the arbitrary prong in *Garrison*:

> With regard to the arbitrary prong, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *O'Neill*, 499 U.S. at 67, 111 S.Ct. 1127 (citation omitted). Mere negligence on the part of a union does not satisfy this requirement. *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73, 376, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990). Moreover, ordinary mistakes, errors, or flaws in judgment also will not suffice. *See Walk v. P.I.E. Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir.1992) (citations omitted). That is, "an unwise or even an unconsidered decision by the union is not necessarily an irrational decision." *Id.* In essence then, to prevail, a plaintiff has the difficult task of showing that the union's actions were "wholly irrational." *O'Neill*, 499 U.S. at 78, 111 S.Ct. 1127. The "wholly irrational" standard is described in terms of "extreme arbitrariness." *Black*, 15 F.3d at 585 ("[T]he relevant issue in assessing a Union's judgment is not whether it acted incorrectly, but whether it acted in bad faith, or extremely arbitrarily, or discriminatorily.") (internal quotation marks and citation omitted).

334 F.3d at 538-39. All that the plaintiffs assert is that the UAW acted arbitrarily in interpreting the PCM and Lear's decision to transfer the Rom I production into the Rom II building. The district court stated that it need not decide whether the UAW properly interpreted the agreements, but "the Court need only make the relatively simple conclusion of whether there was a rational reason for interpreting the agreements as Lear and the UAW did." JA 55. The district court then found that there was a rational reason for the UAW's conduct.

We agree. The UAW's and Lear's interpretation of the transfer of work to Rom II is certainly reasonable. Moreover, there is no evidence that the UAW's behavior was "so far outside a wide range of reasonableness as to be irrational." *Garrison*, 334 F.3d at 538 (citation omitted). As soon as the UAW was notified by Lear that the transfer would be taking place, it appears that the UAW notified its members of its position. It responded quickly and comprehensively to the plaintiffs' letter disputing this interpretation. It informed the plaintiffs of the proper appeal

procedures. We do not believe that the UAW's behavior can even be considered a mistake, flaw in judgment, or negligence, let alone be characterized as "wholly irrational" or of "extreme arbitrariness." *Id.* Thus, we believe that the district court correctly determined that the UAW did not act arbitrarily.

### ii. Whether the UAW's Actions Were Discriminatory or in Bad Faith

"Judging whether a union has acted discriminatorily or in bad faith ordinarily presents a simple and straightforward issue." *Black*, 15 F.3d at 584; *see also Ratkosky*, 843 F.2d at 876 ("Bad faith or intentional discrimination by the union must be shown."). The plaintiffs essentially argue that the UAW discriminated against them by honoring the Rom I collective bargaining agreement over the PCM.[3] In the seniority context, the Supreme Court has stated:

> A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion. Compromises on a temporary basis, with a view to long-range advantages, are natural incidents of negotiation. Differences in wages, hours and conditions of employment reflect countless variables. Seniority rules governing promotions, transfers, layoffs and similar matters may, in the first instance, revolve around length of competent service. Variations acceptable in the discretion of bargaining representatives, however, may well include differences based upon such matters as the unit within which seniority is to be computed, the privileges to which it shall relate, the nature of the work, the time at which it is done, the fitness, ability or age of the employees, their family responsibilities, injuries received in course of service, and time or labor devoted to related public service, whether civil or military, voluntary or involuntary.

---

[3]This refers to Article 5, Section 20 under the Rom I - Lear collective bargaining agreement. That section states: "If Lear Corporation, Romulus 1, located at 36300 Eureka Road, Romulus, Michigan, supplying seats to the DaimlerChrysler Corporation – Warren Truck Assembly Plant – located in Warren, Michigan, suspends operations at its current location and relocates these operations to a new facility providing the same product, operated by Lear Corporation within a 50 mile radius of the Warren Truck Assembly Plant, current Bargaining Unit employees would be permitted to transfer to the new location with their seniority and current benefit and wage levels." Thus, the move to the Rom II facility was covered by this provision of the Rom I CBA and allowed Rom I workers to retain their seniority and benefits.

*Ford Motor Co. v. Huffman*, 345 U.S. 330, 338-39 (1953) (quoted in *Ratkosky*, 843 F.2d at 876-77).

Relying on this language, the Ninth Circuit has held that in bargaining, a successful claimant must demonstrate "a bad faith motive, an intent to hostilely discriminate against a portion of the union's membership." *Hardcastle v. W. Greyhound Lines*, 303 F.2d 182, 185 (9th Cir. 1962). Relying on these and other cases, this Court noted that "[t]he mere fact that plaintiffs are a minority group within their union organization and that they were adversely affected by the actions or inactions of the union does not establish that the union has acted with hostile or discriminatory intent." *Ratkosky*, 843 F.2d at 878-79.

In this case, there is no evidence of bad faith or discriminatory intent on the part of the union. Lear was forced to close Rom II following the loss of business from Ford. Lear and the UAW negotiated the PCM providing a variety of benefits for former Rom II employees. Moreover, the UAW then assisted nearly all of the Rom II employees in finding other Lear employment. Many of those employees are now employed under the Rom I collective bargaining agreement that the plaintiffs allege was improperly favored. According to the district court, "[t]hese are not the actions of a union that was acting discriminatorily and in bad faith. In addition, no alleged facts suggest that the UAW acted discriminatorily or in bad faith." We agree. In addition to the above facts, the UAW promptly responded to the plaintiffs' correspondence and also provided the plaintiffs with another copy of the UAW Constitution and suggested that the plaintiffs appeal using the proper procedures. The mere fact that the plaintiffs did not get what they wanted does not mean that the union discriminated against them or acted in bad faith when there are simply no allegations that would substantiate such a conclusion.

## III.

For the reasons discussed above, we AFFIRM the district court's grant of summary judgment in favor of the defendants.