NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0942n.06

No. 14-3354

**FILED**

Dec 22, 2014

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ROBERT POTTS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE** |
| AMERICAN BOTTLING COMPANY et al., | ) | **NORTHERN DISTRICT OF** |
| | ) | **OHIO** |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE:   NORRIS, MOORE, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**   Robert Potts appeals from the district court's entry of summary judgment in favor of Potts's former employer, American Bottling Company, and his Union, Teamsters Local Union No. 377 ("Local 377"). Potts brought a hybrid § 301/fair representation claim alleging breach of the collective bargaining agreement and breach of the duty of fair representation by Local 377. Potts contends that the district court erred in finding that the hybrid § 301 claims were barred by the applicable six-month statute of limitations. We disagree and affirm.

**I.**

Robert Potts was first employed by American Bottling Company ("ABC") on July 9, 2007. During his employment at ABC, Potts was a member of Local 377. In September 2009, Potts was temporarily laid off from his position. Under the applicable collective bargaining agreement, ABC was required to permit Potts to bid on open jobs before hiring off the street, but

1

Potts faced the potential loss of seniority rights if his layoff exceeded a year. On August 30, 2010, Potts filed grievance number 11823 against ABC for allegedly assigning others to work while Potts was laid off. On September 21, 2010, Potts filed grievance 11824 for wrongful discharge and termination of seniority.

On September 30, 2010, ABC sent to Potts a written response denying grievance 11823 but offering to consider the layoff permanent, which would have allowed Potts to exercise his seniority bumping rights to displace the least senior employee and likely remain employed by ABC in a different position. The letter also indicated that the Union and ABC would hold grievance 11824 in abeyance until grievance 11823 was closed.[1]

Potts failed to respond to ABC's offer. In spite of this, ABC extended the deadline for a response on two separate occasions. Potts never responded, and, as a result, he was terminated on December 1, 2010. Meanwhile, Potts had twice written to Justin Averell, Local 377's Business Representative, alleging that Averell had violated his duty to fairly represent Potts in connection with the grievances. And he had filed, on November 15, 2010, a state court lawsuit against ABC.

Because Potts failed to exercise his bumping rights, in February 2011, ABC denied grievance 11824 in February 2011.[2] Three months later, on May 11, 2011, Potts filed a charge

---

[1] The district court discussed the fact that grievance 11823 was withdrawn after Potts asked his Union representative to withdraw it. While Potts did indeed suggest withdrawal of grievance 11823 to his Union representative, and the Union representative stated in a letter that he would withdraw grievance 11823, some evidence suggests that grievance 11823 was not in fact withdrawn. For instance, Potts's October 2011 settlement agreement with ABC contained a clause explicitly excluding grievance 11823 from the contracted release. Consequently, construing the facts in the light most favorable to Potts, we will assume that grievance 11823 was not withdrawn.

[2] Grievance 11824 was later settled through an October 26, 2011, settlement agreement in which Potts agreed to release all his claims against ABC except for grievance 11823 and another grievance not at issue in this case.

with the National Labor Relations Board.[3]  The charge alleged "[s]ince on or about November 17, 2010, and continuously thereafter . . . the Union . . . failed to represent [Potts]."

In July of 2011, Potts wrote to his Union representative requesting an update on grievance 11823.  He wrote again for the same reason in December 2011.  On January 1, 2012, a new Executive Board was elected for Local 377.  That month, Potts appeared before the Board and, without informing its members about either the denial of grievance 11823 or his settlement agreement, discussed grievances 11823 and 11824.  On May 1, 2012, based on its investigation of the grievances and the opinion of legal counsel, the Board determined not to pursue Potts's grievances to arbitration.

On October 26, 2012, Potts filed suit in the United States District Court for the Northern District of Ohio pursuant to § 301 of the Labor Management Relations Act, asserting a claim for breach of the duty of fair representation by the Union and asserting breach of the collective bargaining agreement against ABC based on grievances 11823 and 11824.  Both ABC and the Union filed motions for summary judgment, contending that the suit was time-barred by the six-month statute of limitations that applies to hybrid actions.[4]  The district court agreed with defendants and entered summary judgment in their favor.  Potts's timely appeal followed.

**II.**

This court reviews a district court's grant of summary judgment *de novo. Bennett v. Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005).  Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any

---

[3] Although the record is unclear, Potts allegedly later withdrew the charge.

[4] ABC also filed a breach of contract counterclaim, and moved for summary judgment on that counterclaim.  (DE 43, Order, Page ID 1645.)  The district court denied ABC's motion without prejudice, and ordered ABC to show cause as to why the counterclaim should not be dismissed for lack of jurisdiction.  (*Id.* at 1649.)  Defendants also jointly filed a motion for sanctions, which was denied by the district court.  (*Id.* at 1650.)

affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville,* 709 F.3d 563, 568 (6th Cir. 2013) (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(a), (c). The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986) (internal quotation marks omitted). In reviewing a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Supreme Court has held that a six-month statute of limitations applies to hybrid § 301/fair representation claims. *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 169 (1983). A hybrid § 301 claim accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993) (internal quotation marks omitted). When a Union refuses to arbitrate a grievance, or withdraws representation, the claim arises when the plaintiff knew or *should have known* that the Union had elected to proceed no further on his behalf. *See Schoonover v. Consol. Freightways Corp. of Del.,* 49 F.3d 219, 221 n.1 (6th Cir. 1995). A decision by a Union not to arbitrate a claim can trigger a plaintiff's knowledge of the acts constituting the violation. *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987).

The district court expressly determined that Potts's hybrid § 301 claim against the company and the Union accrued on May 11, 2011, and thus, Potts's claim filed on October 26, 2012, was not filed within six months of accrual. We agree that this action was not timely filed.

4

At the latest, Potts should have known in May 2011 of his potential cause of action when he filed a charge with the NLRB against Local 377. In that charge, he alleged that the "Union terminated Potts['s] membership and *failed to represent him*." As a result, his action filed in October 2012, more than a year later, is time-barred.

To evade the statute-of-limitations bar, Potts makes two arguments. First, he contends that the statute of limitations was equitably tolled until May 1, 2012, because he was pursuing his claim through the contractual grievance procedure. "We have no obligation to consider [Potts's] equitable-tolling argument, however, because he raised it for the first time on appeal." *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008).

Second, Potts argues that a material question of fact exists, thus precluding summary judgment. The center of this contention is the May 1, 2012 letter which, in relevant part, stated as follows:

> Following our meetings with you at the Local Union, the Executive Board reviewed the circumstances surrounding your grievances regarding Seven-Up Youngstown (the "Company"). The Executive Board has determined that the Union will <u>not</u> pursue binding arbitration of your grievances. The members of the Executive Board discussed the facts of your case and had them examined by legal counsel. Based on our investigation of your grievance and the opinion of legal counsel, the Executive Board voted to <u>not</u> arbitrate your grievances since there was no contractual violation by the company.

According to Potts, there are two potential ways to interpret the May 1, 2012 letter: (1) the district court's interpretation, which found the letter to be merely a continuation of correspondence between Potts and Local 377; and (2) Potts's interpretation, which considers the letter to be the point at which he knew, unequivocally, that Local 377 had abandoned his grievances against ABC, entitling him to file suit within six months of the letter. Potts contends

5

that these different interpretations create a material question of fact, making summary judgment inappropriate. We disagree.

Even accepting Potts's interpretation as true, the standard for determining the accrual date is an objective one. *See Garrish v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 417 F.3d 590, 594 (6th Cir. 2005). Indeed, "the asserted actual knowledge of the plaintiff[] is not determinative if [he] did not act as [a] reasonable person[] and, in effect, closed [his] eyes to evident and objective facts concerning the accrual of [his] right to sue." *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1000 (6th Cir. 1994).

A reasonable employee in Potts's position should have discovered the acts constituting the alleged violation supporting his hybrid § 301 claim before he filed a charge with the NLRB alleging that "[s]ince on or about November 17, 2010" the Union "failed to represent him."[5] Potts's counsel even concedes this fact: "Potts could well have believed that Local 377 had failed to fairly represent him when he filed with the NLRB." But he argues that Local 377's conduct after Potts filed his NLRB charge "contradicted that belief."[6]

Potts's argument lacks merit. As the district court accurately noted, "[a] plaintiff cannot save a claim by writing a later letter[.] . . . The continuance of correspondence with a Union

---

[5] According to Potts, Potts filed an amended charge on June 10, 2011, asserting the same exact allegations, but merely changing the date from November 17, 2010 to December 1, 2010. This, however, does not change the date on which Potts should have known of Local 377's conduct allegedly constituting unfair representation.

[6] It is unclear to what conduct Potts refers to. For approximately five months—from July through December of 2011—Potts neglected to contact Local 377 about his grievances. However, shortly after learning of the election of a new Executive Board, Potts reinitiated contact. In his January 5, 2012 letter to the new Executive Board, Potts repeated his unfair representation accusations saying, "the former Local 377 agents . . . departed from their duty of fair representation." Because Potts failed to inform the new Executive Board that his grievances were dismissed or otherwise compromised, the Board permitted Potts to appear before it to present his grievances. Following this meeting, the Board wrote the May 1, 2012 letter advising Potts of its decision not to arbitrate the grievances. None of the aforementioned conduct changes the fact that Potts discovered, or in the exercise of reasonable diligence should have discovered, acts constituting unfair representation in May of 2011 when he filed the NLRB charge.

6

after the time a plaintiff should know of the acts giving rise to a cause of action is a courtesy[.]" *See Fox v. Parker Hannifin Corp.* 914 F.2d 795, 804 (6th Cir. 1990) ("'[W]hile the Union continued to respond to plaintiff's requests for a hearing before the Board, the courtesy it extended him should not be viewed as procrastination sufficient to toll the statute of limitations. Otherwise, a plaintiff could indefinitely delay resolution of labor disputes merely by bombarding his union with tiresome requests for needless review.'" (alteration in original) (quoting *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 852 (7th Cir. 1985)). At the latest, a reasonable person would have been aware—and Potts acknowledges that he was aware—he had a viable claim against Local 377 when he filed the NLRB charge. The Board's conduct, which occurred more than seven months after Potts's claim accrued, does not alter that fact.

### III.

For the above reasons, we affirm.