**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0367n.06

No. 14-2098

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
May 20, 2015
DEBORAH S. HUNT, Clerk

TYWANA PITTMAN, et al.,

        Plaintiffs – Appellants,

   v.

SPECTRUM HEALTH SYSTEM,

        Defendant – Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
WESTERN DISTRICT OF
MICHIGAN

OPINION

Before: BOGGS and KETHLEDGE, Circuit Judges; HELMICK, District Judge.[*]

## I.    INTRODUCTION

HELMICK, District Judge. Plaintiffs-Appellants Tywana Pittman, TaTanisha Smith, and Reshonda Atkins appeal the district court's order granting the motion of Defendant-Appellee Spectrum Health System for judgment on the pleadings pursuant to Rule 12(c). Appellants are employees of Spectrum and provide home health care services. Appellants allege Spectrum discriminated against them on the basis of their race and assert claims under state and federal law. On appeal, Appellants argue the district court erred when it concluded the continuing-violations doctrine should not be employed to toll the applicable limitations period. For the reasons stated below, we affirm the district court's decision.

---

[*] The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of Ohio, sitting by designation.

## II. BACKGROUND AND PROCEDURE

Appellants are African-American women who provide home health care services as part of Spectrum's Neuro Rehabilitation Section. Spectrum assigned all three to provide care to a Caucasian male patient with brain injuries; Pittman worked with the patient for approximately ten years, while Smith and Atkins worked with the patient for approximately three years. In March 2012, Appellants were informed they no longer would be assigned to work with this patient. Pittman and Smith were told Spectrum would not schedule any African-American employees to work with the patient, and Pittman also asserts she was told the patient's guardian requested that Spectrum no longer assign black employees to work with the patient. Spectrum continues to prohibit black employees from working with this patient.

Appellants filed suit on January 9, 2014. They asserted claims for (1) race discrimination in violation of 42 U.S.C. § 1981; (2) race discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act; (3) intentional infliction of emotional distress; and (4) race discrimination in violation of Title VI of the Civil Rights Act of 1964. Spectrum moved for judgment on the pleadings, arguing all of these claims were barred by a 180-day contractual limitations period, and that Appellants' Title VI claim failed for the additional reason that Appellants did not state a claim for a private cause of action under Title VI. Pittman, Smith, and Atkins had agreed to bring all federal or state civil rights claims arising out of their employment with Spectrum within "180 days of the event(s) giving rise to the claim . . . ." Appellants acknowledged their state-law claims were barred by the contractual limitations period and stipulated to the dismissal of those claims. They argued the

continuing-violations doctrine tolled the contractual limitations period as to their federal claims and that they adequately stated a claim alleging a violation of Title VI.

The district court granted Spectrum's motion, concluding the continuing-violations doctrine did not apply and that Appellants failed to state a valid private cause of action under Title VI. On appeal, Appellants contend the district court's determination that they failed to satisfy the elements of the continuing-violations doctrine is reversible error. Additionally, Appellants assert in their brief that they are entitled to conduct discovery "[i]f further allegations of discriminatory acts are required . . . ." Appellants do not appeal the district court's conclusion that they failed to state a valid Title VI claim.

## III.    ANALYSIS

We review a district court's Rule 12(c) dismissal de novo. *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). We accept all well-pleaded factual allegations as true, view those allegations in a light most favorable to the nonmoving party, and grant the motion only if the moving party nonetheless is "clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 240 (6th Cir. 2011) (internal quotation marks omitted).

Appellants allege Spectrum violated § 1981 when it intentionally discriminated against them on the basis of their race by removing them from shift assignments with a specific patient, in compliance with that patient's instruction that no black Spectrum employees be sent to care for him. Section 1981, among other things, requires private employers to provide equal opportunities to their employees without regard to the employees' race. *See, e.g., Long v. Ford Motor Co.*, 496 F.2d 500, 504-05 (6th Cir. 1974).

3

Spectrum has adopted a company policy under which its employees must bring any civil-rights lawsuits arising out of their employment within 180 days of the events that gave rise to the claim. Appellants agreed to this limitations period in exchange for continued employment and eligibility for wage increases. Parties to a contract may agree to a limitations period different from the period authorized by statute. *See, e.g., Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 455 (6th Cir. 2009). As the district court noted, we previously have upheld a 180-day contractual limitations period on civil-rights causes of action. *See Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357-58 (6th Cir. 2004).

The limitations period for an employment discrimination action begins to run when the allegedly discriminatory act occurred. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *United Airlines, Inc. v. Evans*, 431 U.S. 553, 557-58 (1977). Appellants allege Spectrum began prohibiting any black employees from working with the patient in March 2012, but Appellants did not file suit until January 2014. Thus, as Appellants implicitly concede, they have not complied with the enforceable contractual limitations period. Appellants contend, however, we should apply the continuing-violations doctrine to toll the limitations period.

## A. CONTINUING-VIOLATIONS DOCTRINE

The continuing-violations doctrine operates to toll a limitations period when an employer's conduct "represent[s] an ongoing unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002) (citations and quotation marks omitted). The first of the two categories of continuing violations permits a plaintiff to establish an exception to a statute-of-limitations bar by showing wrongful activity occurring outside of the limitations period is "sufficiently related" to alleged misconduct within the limitations period and thus may be found to "continue[] into the present." *Bowerman v. Int'l Union,*

*United Auto., Aerospace and Agricultural Implement Workers of Am., Local No. 12*, 646 F.3d 360, 366 (6th Cir. 2011) (internal quotation marks omitted) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003), and *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)). Appellants do not argue this category applies to their claims.

The second category under the continuing-violations doctrine tolls the limitations period where an employee alleges her employer had "a long-standing and demonstrable policy of discrimination." *E.E.O.C. v. Penton Indus. Publ'g Co., Inc.*, 851 F.2d 835, 838 (6th Cir. 1988). The employee must allege an "over-arching policy of discrimination" against the protected class of which she is a member. *Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987); *see also Sharpe*, 319 F.3d at 269 (holding that "discriminatory treatment" of an individual plaintiff "is inadequate to invoke the 'longstanding and demonstrable policy of discrimination' continuing violation exception").

Appellants have alleged Spectrum took a class-wide discriminatory action when Spectrum acceded to its client's discriminatory request by prohibiting all black employees from being assigned to work with the client at issue. In addition to alleging a longstanding and demonstrable policy of discrimination, however, parties who seek to invoke the continuing-violations doctrine also must allege they have suffered a specific discriminatory act within the applicable limitations period. *Dixon v. Anderson*, 928 F.2d 212, 217-18 (6th Cir. 1991), *abrogated on other grounds by Sharpe*, 319 F.3d at 268.

We have been clear that an employer's failure to rectify a prior discriminatory act is not sufficient to meet the standard for invoking the continuing-violations doctrine. In *E.E.O.C. v. McCall Printing Corp.*, 633 F.2d 1232 (6th Cir. 1980), the court concluded the continuing-violations doctrine was not triggered by an employer's denial of its employees'

"[r]epeated requests for further relief from a prior act of discrimination . . . ." *Id.* at 1237. In 1966, McCall entered into a settlement agreement with a group of black males who were employed in McCall's mailing and shipping department, and who previously had been excluded from the company seniority system and its formal line of progression. *Id.* at 1234. The company gave the black employees access to the seniority system but calculated their seniority from the date of the settlement agreement, rather than the employees' original hire dates. *Id.* In 1970, McCall transferred a group of white male employees into the mailing and shipping department and calculated their seniority dates from their original hire dates. *Id.* McCall rejected the black employees' request to have their seniority dates similarly calculated. *Id.* In 1972, the EEOC and McCall reached a conciliation agreement under which female employees gained access to the lines of progression and were granted full departmental seniority, calculated from their original hire dates; at that time, McCall again rejected the black employees' request for full departmental seniority. *Id.*

We rejected the EEOC's contention that McCall's denial of the black employees' request following the conciliation agreement revived the black employees' claims. *Id.* at 1237-38. The *McCall* court described the 1966 agreement as only a partial remedy for the company's earlier racially discriminatory conduct, but concluded "[t]he fact that the residual effects of the alleged discrimination are still felt through seniority status established in 1966 does not render this a continuing act of discrimination . . . ." *Id.* at 1237.

Other cases have "further defined the subtle difference between a continuing violation and a continuing effect of a prior violation." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 858 (6th Cir. 2003) (concluding plaintiff's fear of future attempts to enforce a city ordinance against him was the "ill effect" of an earlier discriminatory prosecution and

"not a new act or violation of his rights"); *see also, e.g., Janikowski*, 823 F.2d at 948 (defendant's refusal to place plaintiff in another department, following one-year notice of termination to plaintiff allegedly motivated by plaintiff's age, did not trigger continuing-violations doctrine because plaintiff's placement requests were merely "an attempt to avoid the consequences of the termination"); *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 829 (6th Cir. 2000) (denial of plaintiff's grievance alleging sex and age discrimination did not "constitute a discriminatory act that tolls the statute of limitations" (citing *Janikowski*, 823 F.2d at 948)); *Joishy v. Cleveland Clinic Found.*, 3 F. App'x 259, 261 (6th Cir. 2001) (per curiam) ("Consequences of past acts . . . are insufficient to establish present acts of discrimination and will not extend or toll the limitations period."); *Z Tech. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014) (complaint failed to allege "some injurious act actually occurring during the limitations period . . . [and offered] merely the abatable but unabated inertial consequences of some pre-limitations action." (quoting *Barnosky Oils, Inc. v. Union Oil Co. of Cal.*, 665 F.2d 74, 81 (6th Cir. 1981))); c*f. Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997 1001-02 (6th Cir. 1994) (holding that, while union's initial failure to process a grievance may constitute an unfair labor practice, union's subsequent inactivity in pursuing the grievance was not a continuing violation).

While Appellants may have plausibly alleged Spectrum violated § 1981 by acceding to its client's racial preferences, Spectrum's subsequent failure to undo that violation does not constitute a present act of discrimination. The loss of future shift assignments is "a delayed, but inevitable, consequence" of Spectrum's prior discriminatory act, and not a present, discrete illegal act. *Ricks*, 449 U.S. at 257-58. Appellants fail to show we should apply the

continuing-violations doctrine because they have not alleged they have suffered a specific discriminatory act within the 180-day limitations period. *Dixon*, 928 F.2d at 217-18.

## B. REQUEST FOR DISCOVERY

Appellants assert they are entitled to conduct discovery "if further evidence of discriminatory application of the shift assignment policy is required." Appellants assert they would seek discovery "to determine every cognizable discriminatory employment decision occurring within the six months prior to" the initiation of their lawsuit, as well as "any other instance of Spectrum honoring a client's racial preference in shift assignments." We deny this request for two reasons.

First, Appellants did not raise this issue before the district court. *See, e.g., Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (observing "an argument not raised before the district court is waived on appeal to this Court") (citations omitted); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 601 (6th Cir. 2012) (holding plaintiff's failure to present argument or legal citation before district court constituted waiver). While we "rarely" deviate from this general rule, occasionally we have done so in an "exceptional" case or where the rule "would produce a 'plain miscarriage of justice,'" *Scottsdale Ins.*, 513 F.3d at 552 (quoting *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993)), or if the belated argument raises a "novel" question. *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 544-45 (6th Cir. 1996). None of these exceptions are present here.

Second, Appellants fail to show they might have been entitled to conduct discovery if they had properly raised the issue before the district court, as plaintiffs do not have a "general right to discovery upon filing of the complaint." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) ("The very purpose of [Rule] 12(b)(6) 'is to enable

defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.'" (quoting *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987))).

Moreover, *Parrish v. Ford Motor Co.*, 953 F.2d 1384 (6th Cir. 1992) (unpublished table decision), the sole case Appellants cite in support of their request, is inapposite. In *Parrish*, the parties conducted several months of discovery before the district court granted the defendant's motions to stay discovery and for summary judgment on all claims. *Id.* at *2. This court reversed the summary judgment ruling and remanded the case to the district court with instructions to determine whether the defendant's "unresponsiveness" to the plaintiff's written discovery requests deprived the plaintiff of his right to conduct adequate discovery under Rule 56. *Id.* at *6. Appellants here fail to show they had any parallel right to conduct discovery when faced with a motion for judgment on the pleadings.

## IV.   CONCLUSION

For the reasons stated above, we conclude Appellants have not established the elements of the continuing-violations doctrine, deny Appellants' request to conduct discovery, and **AFFIRM** the district court's dismissal of Appellants claims.